WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Scott Douglas Nordstrom,<br><br>Petitioner,<br><br>v.<br><br>Ryan Thornell, et al.,<br><br>Respondents. | No. CV-20-00248-TUC-RCC<br><br>**ORDER**<br><br><u>DEATH PENALTY CASE</u> |

Before the Court is Petitioner Scott Douglas Nordstrom's Motion for Reconsideration (Doc. 99), requesting this Court reconsider its Order (Doc. 96) denying Nordstrom's motion to stay his federal habeas proceedings. (Doc. 99.) Also before the Court is Nordstrom's Motion for Leave to File an Amended Petition for Writ of Habeas Corpus (Doc. 100) and lodged Second Amended Petition (Doc. 101). The motions are fully briefed. (*See* Docs. 106–109.)

**I.    BACKGROUND**

In 1996, Nordstrom and Robert Jones shot and killed six people over the course of two robberies in Tucson. *State v. Nordstrom*, 230 Ariz. 110, 113, 280 P.3d 1244, 1247 (2012). The jury found Nordstrom guilty of two counts of premeditated murder and four counts of felony murder. *Id.* The trial court found three aggravating circumstances: prior conviction of another offense punishable by life imprisonment or death, pecuniary gain, and multiple homicides. *Id.* The court sentenced Nordstrom to death. The Arizona Supreme Court affirmed the convictions and sentences. *Id.*

Before the Arizona Supreme Court issued its mandate, the United States Supreme Court decided *Ring v. Arizona*, 536 U.S. 584 (2002). The Arizona Supreme Court vacated Nordstrom's death sentences and remanded for resentencing. *See Nordstrom*, 230 Ariz. at 114, 280 P.3d at 1248. The State withdrew the pecuniary gain and multiple homicide aggravating factors and did not seek death on the felony murder convictions. *Id.* At the new sentencing hearing, Nordstrom waived mitigation. *Id.* At the penalty phase, the State presented details about the two premeditated murders and also introduced evidence of Nordstrom's convictions for the four other homicides and other crimes at the Smoke Shop and Union Hall. The State also established that Nordstrom was on parole when the offenses occurred. The jury sentenced him to death on the two premeditated murder convictions. *Id.* The Arizona Supreme Court affirmed. *Id.* at 1253–54.

After unsuccessfully pursuing post-conviction relief ("PCR") in state court, Nordstrom filed a petition for writ of habeas corpus in this Court on April 27, 2021. (Doc. 49.) He filed an amended petition on September 23, 2022. (Doc. 66.)

On October 16, 2023, Nordstrom filed a motion to stay these federal habeas proceedings so he could return to state court to exhaust Claim 29, a claim of ineffective assistance of counsel ("IAC"), and a new claim under *Simmons v. South Carolina*, 512 U.S. 154 (1994), that was not included in either of his petitions. The Court denied the motion, finding Nordstrom's ineffective assistance of trial counsel claim technically exhausted through procedural default, and his habeas petition, which contained no unexhausted *Simmons* claim, fully exhausted and thus ineligible for a stay under *Rhines v. Weber*, 544 U.S. 269 (2005). (Doc. 96 at 8, 9.)

**II.     MOTION FOR RECONSIDERATION**

Nordstrom asserts the Court, in denying his motion for a stay, failed to consider whether he was entitled to a stay under the alternative stay procedure outlined in *Kelly v. Small*, 315 F.3d 1063, 1070 (9th Cir. 2003) *overruled on other grounds, Robbins v. Carey*, 481 F.3d 1143 (9th Cir. 2007), or whether he could amend his habeas petition to add the *Simmons* claim. (Doc. 99 at 2.)

A. <u>Applicable Law</u>

A district court may grant a motion to reconsider only in "highly unusual circumstances." *School Dist. No. 1J. Multnomah County v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993). "Reconsideration is appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *Id.*

Under the rules of this District, motions to reconsider are granted only if the movant makes a showing of "manifest error or new facts or legal authority that could not have been brought to [the Court's] attention earlier with reasonable diligence." LRCiv. 7.2(g). A motion for reconsideration must "point out with specificity the matters that the movant believes were overlooked or misapprehended by the Court" and "any new matters being brought to the Court's attention for the first time and the reasons they were not presented earlier." *Id.* Motions for reconsideration must not "repeat any oral or written argument made by the movant in support of . . . the motion that resulted in the Order." *Id.* Mere disagreement with a previous order is an insufficient basis for reconsideration. *See Leong v. Hilton Hotels Corp.*, 689 F. Supp. 1572, 1573 (D. Haw. 1988).

B. <u>Discussion</u>

In his motion for a stay, Nordstrom argued that "a *Rhines* stay is warranted" to exhaust a *Simmons* claim, a claim he asserts he was unable to raise in state court until the Supreme Court issued its decision in *Cruz v. Arizona*, 598 U.S. 17 (2023). (Doc. 91 at 20, 23.) He reiterated this argument in his reply in support of the motion. (Doc. 95 at 10.) ("Mr. Nordstrom's Amended Petition is a mixed petition that justifies a *Rhines* stay."). As this Court explained, however, *Rhines* applies only to mixed petitions—those containing both exhausted and unexhausted claims. *See King v. Ryan*, 564 F.3d 1133, 1139–40 (9th Cir. 2009). Because Nordstrom's petition contains either fully exhausted or technically exhausted claims, it is not a mixed petition.

Addressing Respondents argument that a *Rhines* stay was unavailable to him, Nordstrom proposed, in his reply, that at a future time he could move to amend his petition

to include the new *Simmons* claim and therefore render the petition mixed. (Doc. 95 at 9.) Although he asserted that the Court could stay a fully exhausted petition, he only made a passing reference to *Kelly* in his reply. He did not move to amend his petition or explain how *Kelly* applies to his case.

"In 1982, the U.S. Supreme Court interpreted the exhaustion rule in the habeas context as requiring 'total exhaustion' of 'mixed' petitions." *King*, 564 F.3d at 1138 (quoting *Rose v. Lundy*, 455 U.S. 509, 522 (1982)). District courts were required to dismiss mixed petitions, leaving petitioners with the choice of returning to state court to exhaust all claims or amending to delete the unexhausted claims and resubmitting a habeas petition presenting only exhausted claims to the district court. The 1996 passage of "AEDPA's one-year limitations period meant that petitioners whose mixed petitions were dismissed under [the total exhaustion principle] ran the risk of being time-barred from bringing their claims again, once exhausted, in federal court." *King*, 564 F.3d at 1139. Three years before the *Rhines* decision, the Ninth Circuit developed a three-step procedure for mixed petitions to address this problem, "allowing (1) a petitioner to amend his petition to delete any unexhausted claims; (2) the court in its discretion to stay and hold in abeyance the amended, fully exhausted petition, providing the petitioner the opportunity to proceed to state court to exhaust the deleted claims; and (3) once the claims have been exhausted in state court, the petitioner to return to federal court and amends his federal petition to include the newly-exhausted claims." *Id.* at 1138–39. This procedure remains viable even after *Rhines*. *See King*, 564 F.3d at 1140–41.

Thus, as an alternative to a *Rhines* stay, which requires a showing of good cause, a district court has discretion to allow a petitioner to amend his petition to delete any unexhausted claims, stay the fully exhausted petition pending exhaustion of the dismissed, unexhausted claims, and then allow the petitioner to seek to amend the petition to include the newly exhausted claims. *See King*, 564 F.3d at 1143; *Kelly*, 315 at 1070. A *Kelly* stay is appropriate "when valid claims would otherwise be forfeited," because an "outright dismissal will render it unlikely or impossible for the petitioner to return to federal court"

- 4 -

within the statutory limitations period, *Kelly*, 315 F.3d at 1070, a concern that has no bearing here as the statutory limitations period has already expired.

Nordstrom did no more than mention in his reply the possibility that he *could* move to amend to add the *Simmons* claim, nor did he explain why the Court should exercise its discretion to stay the petition under *Kelly*. (*See* Doc. 95 at 9.) *Kelly* is inapplicable here because Nordstrom did not present to this Court a mixed petition at risk of outright dismissal under the total exhaustion rule. Additionally, a stay under *Kelly* "will be denied when the court finds such a stay would be futile." *Knowles v. Muniz*, 228 F.Supp.3d 1009, 1016 (C.D. Cal. 2017) (citation omitted); *cf. Rhines*, 544 U.S. at 277 (holding it is an abuse of discretion to grant stay on plainly meritless claims). "Futility would exist if the petitioner seeks a stay to exhaust a meritless claim."[1] *Id.* Further, a petitioner may amend a newly exhausted claim into a pending federal habeas petition after the expiration of the limitation period only if it shares a "common core of operative facts" with one or more of the claims in the pending petition. *Mayle v. Felix*, 545 U.S. 644, 664 (2005). A new claim "does not relate back (and thereby escape AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." *Id.* at 650; *see King*, 564 F.3d. at 1141–42. Though Nordstrom argued his *Simmons* claim was potentially meritorious, he did not attempt to demonstrate that the claim related back to an exhausted and timely claim in his original petition.

Finally, a "district court need not consider arguments raised for the first time in a reply brief." *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) (holding the district court did not abuse its discretion in denying a motion to alter the judgment based on an alleged error raised for the first time in a reply brief). The Court did not overlook or misapprehend Nordstrom's argument; rather, Nordstrom failed to sufficiently brief or support his

---

[1] As discussed below, Nordstrom's *Simmons* claim is meritless. While a stay under *Kelly* does not require a showing of good cause, a *Kelly* stay "will be denied when the court finds such a stay would be futile." *Knowles v. Muniz*, 228 F. Supp. 3d 1009, 1016 (C.D. Cal. 2017) (citation omitted); *see also King*, 564 F.3d at 1139 (*Kelly* recognized "the clear appropriateness of a stay when valid claims would otherwise be forfeited.") (citation omitted, emphasis added).

- 5 -

argument that he was entitled to a *Kelly* stay. The Court therefore denies Nordstrom's motion for reconsideration.

### III. MOTION TO AMEND

The Court denied Nordstrom's request for prospective equitable tolling on the grounds that the COVID-19 pandemic prevented him from investigating and raising all viable claims and directed him to file a timely petition containing all record-based or otherwise unimpeded habeas claims by the April 27, 2021. (*See* Doc. 40.) Nordstrom filed a petition for writ of habeas corpus on April 27, 2021; the petition included a claim that sentencing counsel performed ineffectively by failing to request a jury instruction on parole ineligibility, in violation of Nordstrom's right to effective assistance of counsel and due process of law, under *Simmons*, 512 U.S. at 156. (Doc. 49 at 207–209). On September 23, 2022, Nordstrom filed his First Amended Habeas Petition, leaving unchanged his IAC claim alleging counsel was ineffective for failing to argue the jury should have been informed about Nordstrom's parole ineligibility under *Simmons*. (Doc. 66 at 208–10.) Nordstrom's First Amended Petition was fully briefed on September 15, 2023. (*See* Docs. 72, 87.) Nordstrom filed the instant motion requesting to amend his petition to add a *Simmons* claim on January 18, 2024.

A. Applicable Law

Federal Rule of Civil Procedure 15(a) allows a petitioner to amend a filing by leave of the court at any time before trial—and the "court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). In deciding whether to permit amendment courts consider the following factors: bad faith, undue delay, prejudice to the opposing party, futility of the amendment, and whether the party has previously amended his pleadings. *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995); *see Foman v. Davis*, 371 U.S. 178, 182 (1962). Of these factors, prejudice to the opposing party is the most important. *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387 (9th Cir. 1990).

Leave to amend may be denied based upon futility alone. *See Bonin*, 59 F.3d at 845. To assess futility, a court necessarily evaluates whether relief may be available on the

merits of the proposed claim. *See Caswell v. Calderon*, 363 F.3d 832, 837–39 (9th Cir. 2004) (conducting a two-part futility analysis reviewing both exhaustion of state court remedies and the merits of the proposed claim). If the proposed claims are untimely, unexhausted, or otherwise fail as a matter of law, amendment should be denied as futile. "The party opposing amendment bears the burden of showing prejudice." *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 187 (9th Cir. 1987).

  The Antiterrorism and Effective Death Penalty Act (AEDPA) imposes a one-year statute of limitations for the filing of federal habeas corpus petitions. 28 U.S.C. § 2244(d); *see Pliler v. Ford*, 542 U.S. 225, 230 (2004). Under Federal Rule of Civil Procedure 15(c), Nordstrom may add an otherwise untimely claim to his habeas petition if it relates back to a timely-filed claim. *See Alfaro v. Johnson*, 862 F.3d 1176, 1183 (9th Cir. 2017). In the habeas context, the original pleading to which Rule 15 refers is governed by the "more demanding" pleading standard of Habeas Corpus Rule 2(c), which provides that a petition "specify all the grounds for relief available to the petitioner" and "state the facts supporting each ground." *Mayle*, 545 U.S. at 655. In addition, the "relation back" provision is to be strictly construed in light of "Congress' decision to expedite collateral attacks by placing stringent time restrictions on [them]." *Id.* at 657 (quotation omitted); *see United States v. Ciampi*, 419 F.3d 20, 23 (1st Cir. 2005).

  "*Mayle* requires a comparison of a petitioner's new claims to the properly exhausted claims left pending in federal court . . . ." *King*, 564 F.3d at 1142–43. An untimely claim relates back if it "arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). "The requirement that the allegations in the amended [pleading] arise from the same conduct, transaction, or occurrence is meant to ensure that the original pleading provided adequate notice of the claims raised in the amended pleading." *Williams v. Boeing Co.*, 517 F.3d 1120, 1133 n.9 (9th Cir. 2008) (citing *Martell v. Trilogy Ltd.*, 872 F.2d 322, 326 (9th Cir. 1989)). This Court is not to read the "conduct, transaction, or occurrence" requirement so broadly as to render meaningless the statute of limitations. *Mayle*, 545 U.S. at 662–64.

A late-filed claim in an amended federal habeas petition relates back under Rule 15(c) if the timely claim and the late-filed claim "are tied to a common core of operative facts." *Id.* at 664; *see Hebner v. McGrath*, 543 F.3d 1133, 1134 (9th Cir. 2008) (explaining that "a new claim in an amended petition relates back to avoid a limitations bar . . . only when it arises from the same core of operative facts as a claim contained in the original petition"). Claims share a common core of operative facts if the litigant "will rely on the same evidence to prove each claim." *Williams*, 517 F.3d at 1133. If a new claim clarifies or amplifies a claim or theory already in the original petition, the new claim may relate back to the date of the original petition and avoid a time bar. *Woodward v. Williams*, 263 F.3d 1135, 1142 (10th Cir. 2001). "An amended habeas petition . . . does not relate back (and thereby escape AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." *Mayle*, 545 U.S. at 650.

B. Discussion

Respondents ask the Court to deny Nordstrom's motion to amend because it lacks merit and is untimely. (Doc. 106 at 4.) Nordstrom does not dispute that the motion to amend was filed after the expiration of the statute of limitations but asserts that his new claims are timely because they "relate back" to a claim of ineffective assistance of counsel ("IAC") in his petition. He argues that his new claims arise out of a common core of operative facts contained in his petition including a claim alleging counsel was ineffective for failing to request a parole ineligibility instruction under *Simmons*.

For Claim Thirty-One of Nordstrom's Second Amended Petition to relate back to the date of a pending claim, there must be "a common core of operative facts uniting the original and newly asserted claims." *Mayle*, 545 U.S. at 659 (internal quotation marks omitted). The Court does not look to the legal theory underlying a claim, but to the facts on which it is based. *Ha Van Nguyen v. Curry*, 736 F.3d 1287, 1297 (9th Cir. 2013), *abrogated on other grounds by Davila v. Davis*, 582 U.S. 521 (2017). In analyzing whether an amended petition relates back to an original petition, the Court follows two steps. *Ross*

*v. Williams*, 950 F.3d 1160, 1167–68 (9th Cir. 2020). First, the Court determines "what claims the amended petition alleges and what core facts underlie those claims." *Id.* at 1167. Second, the Court looks "to the body of the original petition . . . to see whether the original petition 'set out' or 'attempted to . . . set out' a corresponding factual episode, *see* Fed.R.Civ.P. 15(c)(1)(B)—or whether the claim is instead 'supported by facts that differ in both time and type from those the original pleading set forth,' *Mayle*, 545 U.S. at 650." *Id.* Applying this framework, the Court finds Nordstrom's original petition contains core facts to which the *Simmons* claim in his proposed Second Amended Petition relate back.

In Claim Twenty-One of Nordstrom's original and Amended Petition, he asserts sentencing counsel was ineffective because he failed to request a jury instruction on parole ineligibility under *Simmons*.[2] In support of this claim, Nordstrom argues that at the time of his sentencing, Arizona law prohibited a capital defendant's release on parole, Nordstrom's future dangerousness was raised by the prosecution, and due process required that his sentencing jury be instructed, under *Simmons*, that he was not eligible for parole. Nordstrom alleges that counsel's failure to request such an instruction constituted deficient performance. (Doc. 66 at 208–09; Doc. 49 at 207–09.)

In Claim Thirty-One of Nordstrom's proposed Second Amended Petition, he alleges his "Fourteenth Amendment right to due process was violated when he was prevented from informing his resentencing jury that he was not eligible to be released on parole if sentenced to a sentence less than death." (Doc. 101 at 263–68.) He further alleges the state put Nordstrom's future dangerousness at issue, but the jury was improperly informed that, absent a death sentence, "the court will sentence him to life without the possibility of release until 25 calendar years in prison are served, or 'natural life,'" (Doc. 101 at 265)

---

[2] This claim was exhausted in state court. The post-conviction court found that the prosecutor's closing arguments did not "put future dangerousness at issue" and that "Petitioner has not shown that the sentencing court would have given *Simmons* instruction if it had been requested." (Doc. 66 at 208) (citing PCR Order at 36 (7/17/2017)). Nordstrom asserts in his habeas petition that the PCR court's conclusion is based on an unreasonable determination of the facts and unreasonable application of clearly established federal law. 28 U.S.C. § 2254(d).

(citing RT 8/27/09).

The *Simmons* claim and Nordstrom's ineffective assistance of counsel claim share a "common core of operative facts" similar in "time and type." *See Mayle*, 545 U.S at 657, 659. The factual core of Nordstrom's ineffective assistance claim is that he was, under Arizona law and as a result of the prosecutor's argument regarding future dangerousness, entitled to a jury that was instructed that he was not parole eligible. Litigating the ineffective assistance claim requires the Court to consider whether he was entitled to such an instruction, as demonstrated by the PCR court's finding that the prosecutor did not "put future dangerousness at issue" and that Nordstrom "has not shown that the sentencing court would have given a *Simmons* instruction if it had been requested." (*See* Doc. 49 at 208) (citing PCR ruling at 36, July 17, 2017). Though the ineffective assistance of counsel claim contains the additional assertions that counsel performed deficiently, the substance of the facts he alleges in support of his *Simmons* due process claim was incorporated in his ineffectiveness claim.

Next, Respondents contend that amendment is futile because Nordstrom's *Simmons* claim is meritless, asserting "*Simmons* relief is foreclosed by the defendant's failure to request a parole ineligibility instruction at trial." (Doc. 106 at 5) (quoting *State v. Bush*, 244 Ariz. 575, 593, 423 P.3d 370, 388 (2018) (quotation marks and alterations omitted). The Court agrees.

A claim is potentially meritorious unless "it is perfectly clear that the [petitioner] does not raise even a colorable federal claim." *Cassett v. Stewart*, 406 F.3d 614, 624 (9th Cir. 2005); *see* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."); *Dixon v. Baker*, 847 F.3d 714, 722–23 (9th Cir. 2017) (finding claim met second prong of *Rhines* test because it was not "plainly meritless"); *Rhines*, 544 U.S. at 277 (a stay is inappropriate in federal court to allow claims to be raised in state court if they are subject to dismissal under § 2254(b)(2) as "plainly meritless."). "In determining whether a claim is 'plainly meritless,' principles of comity and federalism

demand that the federal court refrain from ruling on the merits of the claim unless 'it is perfectly clear that the petitioner has no hope of prevailing.'" *Dixon*, 847 F.3d at 722 (quoting *Cassett*, 406 F.3d at 624).

The Court finds that Nordstrom has "no hope of prevailing" on his *Simmons* claim; it is therefore plainly meritless and the Court denies Nordstrom's motion to amend on these grounds. *See Cassett,* 406 F.3d at 624; 28 U.S.C. § 2254(b)(2). The Arizona Supreme Court's decision in *Bush*, cited by Respondents, correctly explains the due process holding of *Simmons* and validates their argument that Nordstrom has failed to present a colorable claim.

In *Bush,* the court acknowledged that the trial court's jury instruction, referring to the possibility of release after 35 years, was "apparently . . . incorrect" under the Supreme Court's opinion in *Lynch v. Arizona*, 578 U.S. 613 (2016). *Bush*, 244 Ariz. at 592, 423 P.3d at 387. Nonetheless, the court found *Simmons* relief foreclosed by the defendant's failure to request a *Simmons* instruction. Parsing the plurality opinion in *Simmons*, the *Bush* court found Justice O'Connor's opinion, separately concurring in the judgment with Chief Justice Rehnquist and Justice Kennedy joining her opinion, represented the "'narrowest ground[]' that 'may be viewed as [the] position taken by' the Court on the issue of what due process requires in this context.'" *Bush*, 244 Ariz. at 592, 423 P.3d at 387 (quoting *Marks v. United States*, 430 U.S 188, 193 (1977) ("When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds . . . .") (internal quotation omitted). Accordingly, the Arizona Supreme Court in *Bush* held that "the due process right under *Simmons* merely affords a parole-ineligible capital defendant the right to 'rebut the State's case' (if future dangerousness is at issue) by informing the jury that 'he will never be released from prison' if sentenced to life." *Id.* (quoting *Simmons*, 512 U.S. at 177 (O'Connor, J., concurring in the judgment)); *see also O'Dell v. Netherland*, 521 U.S. 151, 159 (1997) (noting that in *Simmons* "there was no opinion for the Court" and that four

1  Justices merely "concluded that the Due Process Clause required allowing the defendant
2  to inform the jury—through argument or instruction—of his parole ineligibility in the face
3  of a prosecution's future dangerousness argument"). Even in the absence of the so-called
4  "*Marks* rule," Nordstrom cites no controlling authority finding *Simmons* error where a
5  defendant has failed to request a parole ineligibility instruction in response to the State's
6  assertion of future dangerousness.

7  In *Bush*, the Arizona Supreme Court noted that in every case in which either it or
8  the United States Supreme Court has found reversible *Simmons* error, the trial court had
9  "either rejected the defendant's proposed jury instruction regarding his ineligibility for
10 parole, prevented defense counsel 'from saying anything to the jury about parole
11 ineligibility' or both." *Id.* at 593, 423 P.3d at 388 (citing *Simmons*, 512 U.S. at 175
12 (Ginsburg, J., concurring); *Lynch*, 578 U.S. at 614 (both rejecting defendant's proposed
13 instruction and refusing to allow defendant to inform the jury of his parole ineligibility);
14 *Kelly v. South Carolina*, 534 U.S. 246, 249 (2002) (refusal to inform); *Shafer v. South*
15 *Carolina*, 532 U.S. 36, 41–46 (2001) (both); *State v. Hulsey*, 243 Ariz. 367, 394, 408 P.3d
16 408, 435 (both); *State v. Rushing*, 243 Ariz. 212, 221, 404 P.3d 240, 249 (2017) (refusal to
17 inform); *State v. Escalante-Orozco*, 241 Ariz. 254, 284, 386 P.3d 798, 828 (2017) (refusal
18 to inform)). The *Bush* court concluded that relief under *Simmons* was foreclosed because,
19 "[u]nlike in the aforementioned cases" in which courts found reversible *Simmons* error,
20 "the trial court neither refused to instruct, nor prevented Bush from informing, the jury
21 regarding his parole ineligibility." *Id.*

22 Nordstrom does not dispute that he did not request a *Simmons* instruction or
23 otherwise seek to inform the jury of his parole ineligibility. Rather, he argues "a *Simmons*
24 claim does not require that the defendant requested a parole-ineligibility instruction, only
25 that the state prevented a parole-ineligibility instruction," which, he asserts, the state did
26 in this case due to binding Arizona law prior to the Supreme Court's decision in *Lynch*.
27 *See State v. Cruz*, 218 Ariz. 149, 181 P.3d 196 (2008) (holding *Simmons* inapplicable in
28 Arizona because no state law would have prohibited Cruz's release on parole after serving

25 years, had he been given a life sentence.).

Nonetheless, it was incumbent upon Nordstrom to request the *Simmons* instruction even where it was seemingly apparent the state court would rule against him. "[A petitioner] may not bypass the state courts simply because he thinks they will be unsympathetic to the claim. Even a state court that has previously rejected a constitutional argument may decide, upon reflection, that the contention is valid." *Engle v. Isaac*, 456 U.S. 107, 130 (1982). "This rule of comity reduces friction between the state and federal court systems by avoiding the unseemliness of a federal district court's overturning a state court conviction without the state courts having had an opportunity to correct the constitutional violation in the first instance." *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) (quotation omitted). Because Nordstrom did not request a parole ineligibility instruction, the trial court "neither refused to instruct, nor prevented [Nordstrom] from informing, the jury regarding his parole ineligibility." *Bush*, 423 P.3d at 388.

Nordstrom asserts that the United States Supreme Court's recent grant of relief in *Ovante v. Arizona*, 144 S. Ct. 56 (Mem.) (2023), despite the fact that Ovante never sought a parole ineligibility instruction in the manner noted in *Bush*, calls into question that court's interpretation of *Simmons*. (*See* Doc. 85 at 7). The Court disagrees. The narrow issue presented in *Ovante* was whether the Court should grant certiorari, vacate the decision below, and remand the case because, in denying Ovante's post-conviction proceedings, "the state court avoided the impact of *Lynch* by declining to apply that decision retroactively or to treat it as a 'change in the law'" under Rule 32.1(g), an opinion that "is inconsistent with *Cruz*." *See Ovante v. Arizona*, Petition for Writ of Certiorari, No. 22-7229 (U.S. Apr. 3, 2023). Those issues do not instruct this Court on the merits of the *Simmons* claim presented here. *See e.g.*, *Sakamoto v. Duty Free Shoppers, Ltd.*, 764 F.2d 1285, 1288 (9th Cir. 1985) ("[U]nstated assumptions on non-litigated issues are not precedential holdings binding future decisions.").

Though *Cruz* may provide an avenue for Nordstrom to seek to raise his *Simmons* claim in state court, he fails to demonstrate how either *Lynch* or *Cruz* calls into question

the *Bush* court's *Simmons* analysis. Stated differently, while *Cruz* may establish a route for Nordstrom to actually exhaust the claim in state court, *Cruz* does not speak to the merits of Nordstrom's *Simmons* claim.

Accordingly,

**IT IS ORDERED DENYING** Nordstrom's motion for reconsideration. (Doc. 99.)

**IT IS FURTHER ORDERED DENYING** Nordstrom's motion to amend. (Doc. 100.)

Dated this 13th day of March, 2024.

_____
Honorable Raner C. Collins
Senior United States District Judge